UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT B.,[1] <br><br> *Plaintiff,* <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> *Defendant.* | ) ) ) ) ) ) No. 2:22-cv-00037-MG-JRS ) ) ) ) ) ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On January 12, 2020, Plaintiff Robert B. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of May 15, 2018. [Filing No. 8-7 at 2-8.] His application was initially denied on July 2, 2020 [Filing No. 8-5 at 2-5], and upon reconsideration on September 16, 2020, [Filing No. 8-5 at 9-11]. Administrative Law Judge Stuart Janney (the "ALJ") conducted a hearing on January 5, 2021. [Filing No. 8-3 at 26-52.] The ALJ issued a decision on February 25, 2021, concluding that Robert B. was not entitled to receive benefits. [Filing No. 8-3 at 6-25.] The Appeals Council denied review on December 3, 2021. [Filing No. 8-2 at 2-6.] On January 31, 2022, Robert B. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 6.] For the reasons set forth below, the Court **REVERSES** the ALJ's decision denying Robert B. benefits.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id*. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Robert B. was 56 years old on the date of his alleged onset of disability and has a high-school education. [*See* Filing No. 8-3 at 32-33.] He has past relevant work as a retail sales manager for farm equipment. [*See* Filing No. 8-3 at 46.] Robert B.'s original application alleges that he cannot work because he suffers from coronary artery disease, high blood pressure, lymphedema, carpal tunnel syndrome, back issues, and cervical spine problems. [*See* Filing No. 8-4 at 2.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Robert B. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Robert B. had not engaged in substantial gainful activity since May 15, 2018—*i.e.*, the alleged onset date. [Filing No. 8-3 at 12.]

- At Step Two, Robert B. had the following severe impairments: "right foot arthritis, posterior tibial tendon dysfunction; cervical spine degenerative disc disease; obstructive sleep apnea; coronary artery disease with cardiomyopathy, supraventricular tachycardia, hypertension, and hyperlipidemia, status post myocardial infarction treated with stent placement; carpal tunnel syndrome and ulnar neuropathy; and level two obesity." [Filing No. 8-3 at 12.]

- At Step Three, Robert B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—

- specifically Listings 1.02[2] (major joint dysfunction); 1.04[3] (disorders of the spine); 11.14 (peripheral neuropathy); 4.04 (ischemic heart disease); and 4.05 (recurrent arrhythmias). [Filing No. 8-3 at 12-13.]

- After Step Three but before Step Four, the ALJ determined that Robert B. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently reach, handle, and perform fine finger manipulation with the bilateral upper extremities. He should avoid concentrated exposure to fumes, odors, dust, gases, areas with poor ventilation, extreme cold, and extreme heat. He should avoid concentrated exposure to hazards such as the operation of heavy machinery and work at unprotected heights." [Filing No. 8-3 at 13.]

- At Step Four, the ALJ found that Robert B. was able to perform his prior work as a manager in retail sales. [Filing No. 8-3 at 19.] Because Robert B. could perform his prior work, the ALJ concluded he was not disabled.

### III.
### DISCUSSION

Robert B. raises a single issue on appeal: whether the ALJ erred by not including a limitation that he avoid stress and anxiety because of his heart issues. [Filing No. 10 at 3.] Robert B. says the inclusion of this limitation would preclude him from performing his prior work as a manager in retail sales. [Filing No. 10 at 4.] Robert B. cites an April 28, 2020 letter from his family physician, Dr. William Thompson, D.O. [Filing No. 10 at 4 (citing Filing No. 8-19 at 72).] In the letter, Dr. Thompson recounts Robert B.'s diagnoses and states that Robert B. "is under significant stress secondary to his medical issues" and that "[a]nything that can be done to keep his anxiety level down would be a benefit for him with his significant heart issues." [Filing No. 8-19 at 72.] Robert argues that the ALJ erred when he decided not to credit this aspect of Dr.

---

[2] Effective April 2, 2021, Listing 1.02 has been replaced by Listing 1.18 (abnormality of a major joint in any extremity).

[3] Effective April 2, 2021, Listing 1.04 has been replaced by Listings 1.15 and 1.16 for spinal and nerve root disorders.

5

Thompson's opinion because of the absence of mental health treatment or medication in his medical records.  [Filing No. 10 at 4-5.]  Robert B. says that "the ALJ either misinterpreted or misunderstood Dr. Thompson's opinion."  [Filing No. 10 at 4.]  More specifically, he contends that the need to avoid stress and anxiety is not related to a diagnosable mental impairment (which Robert B. concedes he does not have for purposes of appeal), but rather the limitation is related to Robert B.'s well-documented history of cardiovascular issues, which the ALJ found to be a severe impairment.  [Filing No. 10 at 5.]

In response, the Commissioner cites the rule addressing medical source opinions, 20 C.F.R. § 404.1520c, and says that the ALJ's analysis of Dr. Thompson's opinion about stress and anxiety complies with that rule, which provides that the most important factors are whether the opinion is supported and consistent with the record.  [Filing No. 12 at 2-3.]  The Commissioner further contends that contrary to Robert B.'s assertion, "[t]he ALJ acknowledged [that] Dr. Thompson's opinion was based on [Robert B.'s] cardiac issues, rather than on a documented mental impairment."  [Filing No. 12 at 3.]  But, says the Commissioner, Dr. Thompson's opinion regarding stress and anxiety is unsupported and contrary to medical evidence "which showed no medication or other therapeutic treatment for anxiety or stress, [] no medication or other therapeutic treatment for anxiety or stress, and no evidence of anxiety-related symptoms in his psychiatric examinations."  [Filing No. 12 at 3.]

In reply, Robert B. reiterates that Dr. Thompson's opinion about a low-stress and anxiety restriction is supported medical evidence by virtue of all the medical evidence describing Robert B.'s cardiovascular impairments.  [Filing No. 13 at 2-3.]

Because Robert B. filed his application after March 2017, 20 C.F.R. § 404.1520c provides the framework for the ALJ's evaluation of medical opinions.  Under this framework, ALJs will

6

evaluate all medical opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 404.1520c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b).

For a provider's opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, for a provider's opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, Dr. Thompson's April 28, 2020 letter reads as follows:

> Robert is a long-standing patient of mine who has multiple medical issues. They include coronary artery disease with bypass surgery, mitral valve regurgitation, supraventricular tachycardia, sustained bradycardia with significant pauses of up to 5.6 seconds, obstructive sleep apnea, hypertension, hypertensive cardiovascular disease, chronic low back pain secondary to degenerative disc disease, anxiety and depression secondary to his multiple medical problems and hyperlipidemia. At present time he is significantly ill and is in need of further evaluation and treatment

7

> of syncopal episodes with significant bradycardia and prolonged pauses. He is under significant stress secondary to his medical issues.
>
> I wanted to verify that he has legitimate medical reasons for his stress and he will need present and further attention to help him sustain life. Anything that can be done to keep his anxiety level down would be a benefit for him with his significant heart issues.
>
> Please contact me if I can be of further assistance.

[Filing No. 8-19 at 72.] The ALJ provided the following analysis of Dr. Thompson's April 28, 2020 letter:

> Doctor Thomson [*sic*] also wrote a letter. In it, he indicated that the claimant needed to avoid stress to keep his anxiety down, which could adversely affect his heart. However, this was not consistent with the claimant [*sic*] lack of medication or treatment for his non-medically determinable mental impairment. It was not supported by his psychiatric exams, which were consistently normal. Given the lack of treatment, medication, or abnormal psychiatric signs, this is wholly inconsistent with the medical record as well as being unsupported by objective evidence leading the undersigned to conclude this was not persuasive.

[Filing No. 8-3 at 19 (internal citation omitted).]

The ALJ adopted faulty reasoning that a record of a diagnosed and treated psychiatric condition is required to support a low-stress limitation. A physical impairment (especially a cardiac-related impairment) can support a low-stress limitation; the impairment does not need to be a mental impairment. *See, e.g.*, *B. v. Comm'r of Soc. Sec.*, 2020 WL 230594, at *2 (S.D. Ill. Jan. 15, 2020) (acknowledging evidence that stress could trigger claimant's heart issues). The etiology of a low-stress limitation can be from an underlying physical condition, not just a mental condition. *See, e.g.*, *Terry v. Astrue*, 2011 WL 855346, at *20 (N.D. Ind. Mar. 7, 2011) (acknowledging that physical impairments can cause concentration limitations); *Frizielle v. Astrue*, 2013 WL 655157, at *17 (E.D. Mo. Feb. 22, 2013) (remanding where ALJ did not discuss stress limitation when claimant's physician "found that plaintiff's cardiac symptoms, rather than a mental impairment … resulted in decreased attention and concentration and need for a low stress

job"). The ALJ should have considered whether Robert B.'s cardiac conditions and related evidence[4] supported and were consistent with Dr. Thompson's opinion that Robert B. needs a low-stress limitation. The ALJ erred by myopically limiting his analysis to psychiatric diagnoses and mental impairments and not addressing whether cardiac-related evidence supports the stress limitation. *Compare Jermane B. v. Saul*, 2021 WL 1827214, at *13 (D.S.C. May 7, 2011) (affirming decision to deny benefits where "ALJ acknowledged [medical doctor's] rationale that exposure to stressful events could increase [claimant's] heart rate and blood pressure and lead to palpitations").

In summary, because the ALJ's rationale regarding the supportability and consistency regarding Dr. Thompsons's low-stress limitation excluded consideration of Robert B.'s cardiac impairments, the ALJ failed to build an accurate and logical bridge to support his conclusion. *See Peeters*, 975 F.3d at 641. Therefore, remand is necessary for the ALJ to consider whether the record regarding Robert B.'s cardiac condition supports and is consistent with the low-stress limitation proposed by Dr. Thompson.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Robert B. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

---

[4] For example, cardiologist Dr. David Blemker, M.D. documented in a note from a June 2019 encounter that Robert B. reported a "couple episodes of CP [chest pain] and SOB [shortness of breath] with stress" and that "[h]is wife has filed divorce and he had one episode of chest discomfort, jaw discomfort, left arm discomfort that required any [*sic*] nitroglycerin." [Filing No. 8-21 at 38.]

9

Date: 3/1/2023

                                                Mario Garcia
                                                United States Magistrate Judge
                                                Southern District of Indiana

**Distribution via ECF to all counsel of record.**